# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                                            Case No. 03-C-1297
                                                      (00-CR-116)

**GUADALUPE PEREZ,**

        Movant.

# DECISION AND ORDER

Movant Guadalupe Perez ("Perez"), who is represented by counsel, filed a motion for relief pursuant to 28 U.S.C. § 2255. Upon initial review, the Court determined that Perez's motion did not comply with Rule 2 of the Rules Governing Section 2255 Proceedings in the United States District Courts, and directed Perez to file an amended motion if he intended to pursue his motion. Perez filed an amended motion. The government filed a response.

On October 10, 2004, Perez filed a pro se request for clemency.

*Background*

In June 2000, Perez was named in a twenty-defendant case which charged each of the named defendants with being a member of a conspiracy to possess, with intent to distribute, and to distribute in excess of five kilograms of cocaine. A superceding indictment was returned on June 5, 2001. The superceding indictment added an ending time period for the offense and reduced the number of defendants to 15.

On October 2, 2001, Perez entered into a written plea agreement which states that he acknowledges and agrees that he is in fact guilty of the drug conspiracy offense charged in the superceding indictment. (Plea Agreement, ¶ 5.) On October 10, 2001, Perez appeared before this Court to enter a plea of guilty to Count One of the superseding indictment which charged him with conspiring to possess with intent to distribute and distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and § 846. A sentencing hearing was scheduled for December 14, 2001.

A presentence investigation report ("PSI") was prepared by the United States Probation Office ("probation office") on November 26, 2001. The PSI states that during the second period of court authorized interception of telephones, Perez (believed to be an elder cousin of co-defendant Pedro Perez ("Pedro")[1]) was identified as the source of cocaine in Long Beach, California and that Perez "controlled shipments of cocaine from California to Green Bay." (PSI ¶¶ 39-40.) The PSI also reports that the government monitored "dozens of conversations" between Pedro and Perez regarding the entire breadth of the criminal activity transpiring in Green Bay." (*Id*. at ¶ 40.) The PSI states based on Perez's total offense level of 32 and Perez's criminal history category of I, the guideline imprisonment range was 121 to 151 months. (*Id*. at ¶ 194.)

On December 4, 2001, Perez filed objections to the PSI with the probation office stating that at sentencing he would contest the amount of controlled substances involved in the offense and, therefore, objected to the base level offense of 32. Perez also objected to the PSI's

---

[1] The Court departs from its usual practice of referring to parties by their surnames to distinguish between the movant and his co-defendant.

failure to afford acceptance of responsibility credit under U. S. Sentencing Guidelines Manual § 3E1.1 (2001).[2] In addition, Perez contested the PSI's failure to afford any "safety valve" consideration under U.S. Sentencing Guidelines Manual § 5C1.2, asserting during his October 10, 2001, debriefing by the government he had truthfully provided the government with all the information and evidence he had concerning the offense.

On December 10, 2001, the government responded that the PSI was correct as written. (Addendum to PSI, 1.) The government also indicated that, to date, Perez had not provided the government with a statement which qualified him for the "safety valve" provision. (*Id*. at 4.)

On December 11, 2001, Perez filed a motion to adjourn his sentencing until Pedro was sentenced, because Perez anticipated calling Pedro to testify in support of Perez's challenge to the relevant conduct as it related to drug quantities for which Perez was responsible, and to support Perez's contention that he was eligible for a downward acceptance of responsibility adjustment and a "safety valve" adjustment. (Docket No. 528.) At Perez's request, the Court rescheduled the sentencing hearings of Pedro and Perez for January 25, 2002. (Docket No. 534.)

At the January 25, 2002, sentencing hearing, the Court sentenced Pedro and then sentenced Perez. (Tr. at 34.) Perez withdrew his objections to the PSI and asked to be sentenced pursuant to the guideline range recommended by the probation office. (*Id.*) As a basis for the decision, Perez's attorney cited his conversations with Perez prior to and during

---

[2] All citations to the U.S. Sentencing Guidelines Manual are to the amendments effective November 1, 2001, which were in effect when Perez was sentenced.

the two preceding hours of the sentencing hearing, and the government's position that Perez did not qualify for the "safety valve" provision, which made any reduction for the acceptance of responsibility a moot point. (*Id.*) Counsel stated that, without the "safety valve," Perez's statutory minimum sentence was ten years and Perez's current guideline range placed him at the statutory minimum. (*Id.*) Counsel also stated that Perez had decided not to testify and it also seemed that Pedro "had a change of heart, anyway, as to whether he would testify on behalf of . . . Perez and may, in fact, invoke his Fifth Amendment [rights.]" (*Id.*) The Court asked Perez whether he had heard his attorney's discourse and whether it was "true and correct." (*Id.*) Perez stated, "Yes, Judge." (*Id.*) The Court sentenced Perez to 121 months (with credit for time served). Judgment was entered on January 28, 2002.

On February 4, 2002, Perez's court-appointed trial counsel filed a notice of appeal. On December 4, 2002, the appeal was dismissed, upon Perez's motion.

*Grounds Raised by Perez*

Perez states that at the sentencing hearing he wanted to offer his testimony and that of Pedro which would have shown that Perez's involvement in the criminal conduct was minimal or that he was a minor participant in the criminal activity. He states that if he would have been successful, he would have been entitled to a two to three level decrease in his offense level. *See* U.S.S.G. § 3B1.2.[3] Perez states that trial counsel's waiver of Perez's right to provide

---

[3]U.S. Sentencing Guidelines Manual § 3B1.2 states:

Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels.

U.S. Sentencing Guidelines Manual § 3B1.2 Application Note 4 explains the propriety of a Section 3B1.2 reduction:

4

the Court with such evidence at the time of sentencing amounted to ineffective assistance of counsel.

Perez also maintains that his trial counsel was ineffective because counsel waived the right to present evidence that Perez qualified for the "safety valve" consideration which, if established, would have lead to a two level reduction in offense level and relief from the ten year mandatory minimum sentence. U.S.S.G. § 5C1.2. Perez requests that the Court conduct a hearing to determine whether he was sentenced under the proper guidelines. Perez indicates that, if he prevails, his sentence should be vacated and he should be resentenced under the proper guidelines.

*Government's Response*

The government agrees that Perez may raise his ineffective assistance of counsel claims at this juncture. But, the government indicates that Perez has not presented any concrete evidence of what he or anyone else on his behalf was prepared to testify to at the sentencing hearing that would have shown that he was a minor or minimal participant or that he was

---

> Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

U.S. Sentencing Guidelines Manual § 3B1.2 comment. (n.4).

Application Note 5 further explains that Subsection (b) applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S. Sentencing Guidelines Manual § 3B1.2 comment. (n.5).

eligible for a "safety valve" reduction. The government states that Perez cannot show deficient performance of counsel or prejudice.[4]

*Analysis*

Relief under § 2255 is reserved for extraordinary situations. *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). To succeed on a §2255 motion, a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

The general rule is that an issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issues would lead to a fundamental miscarriage of justice. *Id*.

However, in *Massaro v. United States*, 538 U.S. 500, 504 (2003), the Supreme Court made clear that ineffective assistance of counsel claims are an exception to this general rule, and "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

Under the familiar two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that counsel's performance fell below minimum professional standards and that this deficient performance "prejudiced" the defendant. *Id*. at

---

[4] In its response, the Government stated that within seven days it would submit a report of the United States Drug Enforcement agents' interview of Perez. (Response, 3 n.1.) No interview report was filed.

6

687. In order to demonstrate "prejudice," a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Judicial review of attorney performance is highly deferential, and there is a strong presumption that the attorney's performance was reasonable. *Id*. at 689. Even if a defendant's counsel's performance was deficient, the defendant must show that there is a reasonable probability that, but for the deficient performance, the result of the proceedings would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Perez's claims of ineffective assistance of trial counsel are properly before the Court under *Massaro*, 538 U.S. at 504.

*Ineffective Assistance of Trial Counsel*

To the extent that Perez is requesting an evidentiary hearing on his section 2255 motion, he has not made a showing that might demonstrate a need for an evidentiary hearing. *See United States v. Galbraith*, 313 F.3d 1001, 1009 (7th Cir. 2002) (holding that in order to show a need for an evidentiary hearing, a section 2255 movant must file a detailed and specific affidavit showing he has actual proof of the allegations he is making). Perez has not submitted the required affidavit indicating that, at the sentencing hearing, he or Pedro was prepared to testify to facts that would have shown that Perez was a minor or minimal participant or that the information that Perez provided to the government about the offense was truthful, thereby qualifying him for a "safety valve" reduction.

7

To show that he wanted to offer his testimony and Pedro's testimony indicating his minimal involvement in the criminal conduct or that he was a minor participant in the criminal activity, Perez submits a copy of a letter dated December 1, 2001, that he sent to his trial attorney. (Am. 28 U.S.C. 2255 Mot. 3.) The letter states that counsel had promised to discuss with the government the weight of the drugs, which Perez states was under "2K." (Ex. A, 1.) The letter also states that "on January 2000, there was a trade between [Perez] and a[n] individual, but talking with Pedro, it was not a drug transa[c]tion," and that the only one was [in] April 2000." (*Id.*) Perez states that there were a total of 500 grams associated with that transaction. (*Id*.) The information does not relate to Perez's (or Pedro's) willingness to testify at the sentencing hearing.

In his motion, Perez references page four of the sentencing hearing transcript. The cited page states that Perez was anticipating calling Pedro as "a witness with regard to the amount of relevant conduct with regard to . . . Perez's involvement in the matter of this offense." (Tr. at 4.) After about two hours, the sentencing proceedings shifted to Perez and the Court indicated that it understood that Perez was going to call Pedro as a witness. (Tr. 35.) Perez's counsel stated that Perez had decided not to call Pedro as a witness, and that he also believed that Pedro was no longer willing to testify on behalf of Perez. (*Id.*) The cited transcript page only relates to possible relevant conduct testimony from Pedro, not to testimony regarding the extent of Perez's participation in the cocaine distribution conspiracy as it would pertain to Perez as a minor or minimal participant under U.S. Sentencing Guidelines Manual § 3B1.2.

Perez also states that counsel waived the right to offer evidence that would show that Perez was entitled to the "safety valve" consideration. The "safety valve" provision of 18 U.S.C. § 3553(f), effectuated by U.S. Sentencing Guidelines Manual § 5C1.2, allows the district court to depart below the statutory mandatory minimum sentence for certain drug offenses if the defendant satisfies each of the five criteria set forth in the statute. *United States v. Harrison*, 431 F.3d 1007, 1013 (7th Cir. 2005). The provision generally applies "where the defendant is a first time offender who was not the organizer or leader of criminal activity and has made a good faith effort to cooperate with the government." *Id*. The government indicated that Perez did not qualify for the "safety valve" provision because it did not believe that information provided by Perez was accurate. (*See* Addendum to PSI, 4.) Perez has not provided any affidavit indicating that he or Pedro would have testified at the sentencing hearing as to any facts indicating that Perez met the missing criterion for application of the "safety valve" provision.

Perez's claims regarding testimony supporting the two guideline provisions are "vague, conclusory, or palpably incredible," rather than "detailed and specific." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also Prewitt*, 83 F.3d at 819. Perez has not "allege[d] facts that, if proven, would entitle him to relief." *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994). Perez has not presented evidence suggesting that trial counsel's performance was deficient with respect to the minor or minimal participant credit or the safety valve provision.

In sum, Perez has failed to establish that trial counsel's performance was deficient. *Strickland*, 466 U.S. at 694. Furthermore, even if Perez had demonstrated that trial counsel's performance was deficient, he has not shown that there is a reasonable probability that, but for the deficient performance, the result of the proceedings would have been different. *Id.* at 694. Therefore, Perez's motion for relief pursuant to 28 U.S.C. § 2255 is denied.

### *Clemency*

Perez also filed a request for clemency. He states that when he is done serving his time, he wants to be with his family in California. The power to grant clemency for offenses against the United States rests with the executive, not the judicial, branch. *See* U.S. Const. Art. II § 2, cl. 1 ("The President . . . shall have Power to grant Reprieves and Pardons for Offenses against the United States."); *Schick v. Reed*, 419 U.S. 256, 266-67 (1974). The power to grant the requested relief does not rest with this Court.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Perez's amended 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence is **DENIED**,

Perez's request for clemency is **DENIED**,

This action is **DISMISSED** with prejudice,

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of September, 2006.

                    **BY THE COURT**


                    s/ Rudolph T. Randa
                    **Hon. Rudolph T. Randa**
                    **Chief Judge**